UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————x
                              :

GWYNN X. KINSEY, JR.,              :
                              :

                  Plaintiff,    :

                              :

       - against -            :     No. 1:18-cv-12345-VSB
                              :

THE NEW YORK TIMES COMPANY,   :
                              :

                  Defendant.  :
                              :
————————————————————————x

 

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS BY DEFENDANT
<u>THE NEW YORK TIMES COMPANY</u>**

                      David E. McCraw, Esq.
                      Al-Amyn Sumar, Esq.
                      The New York Times Company
                      Legal Department
                      620 Eighth Avenue
                      New York, NY 10018
                      Phone: (212) 556-4031
                      Fax: (212) 556-4634
                      Email: mccraw@nytimes.com

                      *Attorneys for Defendant*
                      *The New York Times Company*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ......................................................................................................... 3

  The Article ............................................................................................................... 3

  Mr. Coburn's Correspondence With Ms. Benner ..................................................... 6

  This Action .............................................................................................................. 7

LEGAL STANDARD .................................................................................................. 8

ARGUMENT .............................................................................................................. 8

  I. THE CHALLENGED STATEMENT IS ABSOLUTELY PRIVILEGED AS A FAIR AND
  TRUE REPORT OF A JUDICIAL PROCEEDING .............................................. 10

    A.  The Fair Report Privilege Erects an Absolute Bar to Defamation Claims .................... 10

    B.  The Challenged Statement Falls Squarely Within the Privilege ................................... 13

  II. PLAINTIFF HAS NOT PLAUSIBLY ALLEGED THAT THE TIMES PUBLISHED THE
  CHALLENGED STATEMENT WITH ACTUAL MALICE ................................................ 166

    A.  Plaintiff is a Public Official ............................................................................. 16

    B.  Plaintiff Has Failed to Plausibly Allege Actual Malice ................................................ 18

CONCLUSION ........................................................................................................... 22

**TABLE OF AUTHORITIES**

**Cases**

*Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013) ............................................................. 8

*Ali v. Fed. Ins. Co.*, 719 F.3d 83 (2d Cir. 2013) ........................................................................... 10

*Anderson v. Stanco Sports Library, Inc.*, 542 F.2d 638 (4th Cir. 1976) ..................................... 8, 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 8

*Baiul v. Disson*, 607 F. App'x 18 (2d Cir. 2015) .......................................................................... 16

*Beary v. West Publishing Co.*, 763 F.2d 66 (2d Cir. 1985) ..................................................... 12, 13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 8, 16

*Biro v. Condé Nast*, 807 F.3d 541 (2d Cir. 2015) .................................................................. *passim*

*Biro v. Condé Nast*, 883 F. Supp. 2d 441 (S.D.N.Y. 2012) ............................................. 11, 12, 14

*Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249 (D.D.C. 2013) .................................................. 10

*Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ........ 17

*Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 F. App'x 87 (2d Cir. 2018) ......................... 17, 18

*Cholowsky v. Civiletti*, 69 A.D.3d 110 (2d Dep't 2009) ........................................................... 11, 12

*Church of Scientology International v. Behar*, 238 F.3d 168 (2d Cir. 2001) ............................... 22

*Coliniatis v. Dimas*, 965 F. Supp. 511 (S.D.N.Y. 1997) ............................................................. 17

*Crane v. Arizona Republic*, 972 F.2d 1511 (9th Cir. 1992) ......................................................... 17

*D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211 (E.D.N.Y. 2012) ........................................ 13, 14

*Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209 (N.D.N.Y. 2014) ...................................................... 11, 14

*Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405 (S.D.N.Y. 2009) ............. 13, 14, 15

*Garrison v. Louisiana*, 379 U.S. 64 (1964) ................................................................................. 18

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974) ....................................................................... 19

*Gubarev v. BuzzFeed, Inc.*, 340 F. Supp. 3d 1304 (S.D. Fla. 2018)............................................ 11

*Hargrave v. Wash. Post*, 365 F. App'x 224 (D.C. Cir. 2010) .................................................. 13

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63 (1979)

.................................................................................................................................. 12

*Horne v. WTVR, LLC*, 893 F.3d 201 (4th Cir. 2018) .......................................................... 16, 17

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.,* 363 F.3d 137 (2d Cir. 2004)........................... 10

*Jeanty v. City of Utica*, 2017 WL 6408878 (N.D.N.Y. Aug. 18, 2017) ........................ 13, 15, 20

*Lacher v. Engel*, 33 A.D.3d 10 (1st Dep't 2006)................................................................... 12

*Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504 (S.D.N.Y. 2013) .............................................. 12, 13

*Lovingood v. Discovery Commc'ns, Inc.*, 275 F. Supp. 3d 1301 (N.D. Ala. 2017)..................... 17

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369 (4th Cir. 2012)............. 18

*Meiners v. Moriarity*, 563 F.2d 343 (7th Cir. 1977) ............................................................ 17

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) .................................................. 20

*Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425 (D. Md. 2005) ................................... 13

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964)................................................................... 16

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)...................................................... 8

*Piscatelli v. Van Smith*, 35 A.3d 1140 (Md. 2012) ................................................................. 10

*Reuber v. Food Chem. News, Inc.*, 925 F.2d 703 (4th Cir. 1991)......................................... 11, 22

*Rodriguez v. Daily News, L.P.*, 142 A.D.3d 1062 (2d Dep't 2016)....................................... 12, 15

*Rosenblatt v. Baer*, 383 U.S. 75 (1966) ........................................................................... 16, 17

*Russian Am. Found., Inc. v. Daily News, L.P.*, 109 A.D.3d 410 (1st Dep't 2013)..................... 14

*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)......................................................... 16, 18, 19

*Tacopina v. O'Keeffe*, 645 F. App'x 7 (2d Cir. 2016) ............................................................ 10

*Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631 (2d Cir. 2016) ..................................................... 15

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584 (S.D.N.Y. 2009) ... 13

*Thomas v. City of New York*, 2018 WL 5791965 (E.D.N.Y. Nov. 5, 2018) .......................... 12, 13

*United States v. Hyatt*, 2008 WL 616055 (S.D. Ala. Mar. 3, 2008) ........................................... 15

*Wash. Post Co. v. Keogh*, 365 F.2d 965 (D.C. Cir. 1966) ............................................................ 8

*Wenz v. Becker*, 948 F. Supp. 319 (S.D.N.Y. 1996) ............................................................. 11, 14

*Williams v. Williams*, 23 N.Y.2d 592, 599 (1969) .................................................................... 11

*Zappin v. Daily News, L.P.*, 2017 WL 3425765 (S.D.N.Y. Aug. 9, 2017) .................................. 12

*Zappin v. NYP Holdings, Inc.*, 2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018) ...................... 13, 15

**Statutes**

N.Y. Civ. Rights Law § 74 ............................................................................................ *passim*

**Other Authorities**

Department of Justice, *Justice Manual* (2018) ........................................................................... 18

Restatement (Second) of Torts (1977) ................................................................................. 15, 20

R.D. Sack, *Sack on Defamation* (5th ed. 2017) ....................................................................... 9, 16

L. Tribe, *American Constitutional Law* (2d ed. 1988) ................................................................ 17

C. Wright et al., Federal Practice & Procedure Civ. (4th ed. 2018) ........................................... 15

Defendant The New York Times Company ("The Times"), publisher of *The New York Times* and www.nytimes.com, respectfully submits this memorandum of law in support of The Times's motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In March 2018, *The New York Times* did exactly what a newspaper is supposed to do in a democratic society: it published an article shedding light on the internal dysfunction and managerial misconduct at an important government agency, the Capital Case Section of the Department of Justice. In writing about Plaintiff Gwynn X. Kinsey, Jr., a senior official at the agency, it relied on court documents – the quintessential sort of reporting that has been protected for centuries in Anglo-American law by the "fair report privilege." Plaintiff Kinsey is able to bring this lawsuit only through a fundamental misunderstanding of libel law and an apparent desire to keep secret from citizens his dubious conduct in managing a critical office within the Department of Justice.

The article at issue, written by *Times* reporter Katie Benner, is headlined online: "At the Justice Dept.'s Death Penalty Unit, Accusations of Favoritism, Gender Bias and Unwanted Groping." The article reports a series of disturbing incidents at the Capital Case Section, including a happy hour in a barroom for the unit's employees in May 2017, in which – as Plaintiff Kinsey concedes – he engaged in "interactions of a sexual nature" with an administrative assistant even though he was a senior manager in her unit. One eyewitness to that inappropriate behavior later said in a declaration filed in a federal court case that Kinsey "began to take what seemed very clearly to be unwelcome liberties of a physical, sexual nature." The article also reports the fallout from the incident, including the complaint filed by the mistreated

1

junior employee and an Inspector General investigation that led to Kinsey's demotion and move to another division.

In December 2018, Plaintiff Kinsey filed this lawsuit against The Times, asserting a single claim for defamation. The sole basis of his claim is his objection to The Times's accurate quoting of the eyewitness's declaration in which the eyewitness declared that Mr. Kinsey's sexual interaction with the junior employee was "unwelcome."

Mr. Kinsey is understandably unhappy that a report about his misconduct has surfaced in *The New York Times*. But even assuming the truth of his allegations, he has no recourse against The Times for two reasons. First, as a matter of law, Kinsey cannot hold The Times liable for accurately republishing the contents of a publicly filed court document. The fair report privilege protects the press and others when they accurately report on judicial proceedings, so long as the report attributes its statements to the proceeding. That is exactly what happened here, and that alone makes Plaintiff's defamation claim meritless.

Second, the Complaint fails to plausibly allege that The Times published the challenged statement with "actual malice," *i.e.*, with knowledge that it was false or with serious doubts about its truth. The First Amendment prohibits public officials like Mr. Kinsey from recovering on defamation suits absent a showing, by clear and convincing evidence, that a defamatory statement was made with actual malice. That, in turn, requires a plaintiff to sufficiently allege actual malice in his complaint. Here, the Complaint's allegations – that The Times failed to adequately investigate the underlying facts in the eyewitness's declaration in the federal court case and that The Times's reporter had previously articulated opinions about sexual harassment in the workplace – do not give rise to a plausible inference of actual malice.

The Complaint fails to state a claim upon which relief can be granted, and any amendment would be futile. It should be dismissed with prejudice.

## BACKGROUND

### The Article

The Times's March 31, 2018, article (the "Article") focuses on mismanagement and misconduct at the Capital Case Section ("CCS") of the Department of Justice ("DOJ"), a unit that provides advice and assistance to government attorneys in capital cases.[1] *See* Dkt. 2, Complaint ("Compl.") Ex. 2 ("Article") at 2.[2] Relying on court records, internal documents, and interviews with current and former employees, the Article reports that the head of CCS, Kevin Carwile, had "fostered a culture of favoritism and sexism" within the unit. *Id.* at 1. As the Article describes, CCS employees had made at least 12 complaints to DOJ officials, the Inspector General, and the Equal Employment Opportunity Commission ("EEOC"). *Id.* Six employees left CCS or "quit government altogether in part because of the toxic climate." *Id.* at 2. Mr. Carwile remained head of CCS despite the complaints; he was "demoted and detailed to a different division" only after *The New York Times* contacted DOJ about the grievances against him. *Id.*

---

[1] The primary responsibility of CCS is to do "a preliminary analysis of all cases in which the United States Attorney charges a defendant with a crime punishable by death" and submit that analysis to the Attorney General's Review Committee on Capital Cases; the Committee, in turn, evaluates cases and makes recommendations to the Attorney General about the appropriateness of seeking the death penalty. United States Department of Justice, *Capital Case Section*, https://bit.ly/2D0Ozlp. CCS attorneys also "provide legal, procedural, and technical assistance to United States Attorneys in capital investigations and prosecutions; develop policies and procedures for Federal capital prosecutions; provide training for Federal capital litigators; draft legal memoranda and pleadings; maintain a resource library on capital issues; and provide assistance in capital trials, appeals, and post-conviction litigation." *Id.*

[2] The Article also ran in the April 1, 2018 print edition of *The New York Times*, with the headline: "Years of Claims Of Harassment In Justice Dept." Compl. Ex. 3 at 1.

Both Mr. Carwile and Plaintiff Kinsey, his deputy, "remained Justice Department employees despite the inquiries." *Id.* at 1.

Among the aggrieved employees in the unit was Jacabed Rodriguez-Coss. A prosecutor who lived in and worked from Connecticut, Ms. Rodriguez-Coss "complained to human resources that Mr. Carwile expected her to involuntarily travel far more than her male counterparts." *Id.* at 3. After she filed a complaint with the EEOC – which in turn notified DOJ – Mr. Carwile "suspended permission for her to work from Connecticut." *Id.* at 4. As the Article reports, Ms. Rodriguez-Coss then filed a lawsuit against DOJ in 2016, "accusing [Mr. Carwile] of gender discrimination and claiming that her permission to work in Connecticut was taken away in retaliation for her complaints." *Id.* The Article also notes that "[s]even men and women from the unit filed declarations" in support of Ms. Rodriguez-Coss. *Id.* One former colleague said in his declaration that he left CCS because of "plainly unethical and improper conduct" and that Mr. Carwile promoted "a sexualized environment." *Id.* (internal marks omitted).[3] The Article also describes the experiences of two other prosecutors in CCS, Amanda Haines and Ann Carroll, who tried to draw attention to "work-quality issues" and "ethical violations" in the unit. *Id.* at 4-6.

The Article then turns to the incident at issue here. During "a work-sanctioned happy hour" in May 2017, the Article reports, "colleagues watched Mr. Kinsey grope the administrative assistant, Alyssa tenBroek." *Id.* at 6. As the principal basis for this account, the Article quoted –

---

[3] At the time the Article was published, the Government's motion for summary judgment on Ms. Rodriguez-Coss's claims was pending. *See Rodriguez-Coss v. Lynch*, 16-cv-00633-VLB (D. Conn.). On June 29, 2018, the district court granted the Government's motion. *Id.* Ms. Rodriguez-Coss has appealed. *Id.*

and also reproduced excerpts of – a declaration filed by Luke Woolman, then an intern at CCS, in Ms. Rodriguez-Coss's federal suit against DOJ:[4]

> "Mr. Kinsey, who is a married man, began to take what seemed very clearly to be unwelcome liberties of a physical, sexual nature," Luke Woolman, an intern at the time, wrote in his declaration. He said Mr. Kinsey repeatedly touched Ms. tenBroek, whom he identified as A.T., "inappropriately, openly and obviously" in front of patrons, Mr. Carwile and at least one other Justice Department prosecutor.

*Id.*; *see* Compl. Ex. 4 ("Woolman Decl.") ¶ 6. At that point, the Article notes, Mr. Woolman and the prosecutor who witnessed the touching, Sonia Jimenez, "suggested everyone go home." Article at 6. Ms. Jimenez "tried to discourage Mr. Kinsey from trying to persuade Ms. tenBroek to go to a hotel with him," according to an internal memorandum by another prosecutor, Ms. Haines. *Id.* For his part, Mr. Carwile "pulled aside Mr. Woolman and asked him not to tell anyone what he had seen." *Id.*; *see supra* n.4.

Plaintiff Kinsey's inappropriate behavior toward Ms. tenBroek went beyond the happy hour, as the Article reports. Ms. tenBroek "showed colleagues text messages from Mr. Kinsey in which he offered to give her money, pay her bills, or take her on a trip." Article at 7. Plaintiff also sent Ms. tenBroek "photos of herself that he had downloaded from the Internet." *Id.* In the

---

[4] Those excerpts, which appear in the online version of the Article, read as follows:

> 7. Mr. Kinsey repeatedly touched A.T. inappropriately, openly and obviously, in the presence of Proper 21 patrons, as well as Mr. Carwile and at least one Capital Case Section attorney who was still present and seated nearby. Mr. Carwile did not chide, warn or request that Mr. Kinsey desist in any way, although, as stated, what was occurring was obvious and inappropriate.

> 8. Instead, at the end of the evening, Mr. Carwile approached me and asked me not to discuss anything that I witnessed. I initially laughed because I presumed Mr. Carwile was joking, but then he sternly reiterated his request, specifically stating that he was being serious.

These excerpts are not viewable in the version of the Article filed with the Complaint, but they can be seen online. Katie Benner, *At the Justice Dept.'s Death Penalty Unit, Accusations of Favoritism, Gender Bias and Unwanted Groping*, The New York Times (Mar. 31, 2018), https://nyti.ms/2Q9uk9C.

texts, Plaintiff signed off "XOXOXOX"; in others, "he appeared to apologize." *Id.* Ms. tenBroek also conveyed to Ms. Haines and another prosecutor, Julie Mosley, that "Mr. Kinsey groped her again in the cab and tried to coerce her into checking into a hotel." *Id.*

Ms. tenBroek and her colleagues made complaints. Ms. Mosley informed the EEOC, and Ms. Haines "sent her memo to superiors at the Justice Department." *Id.* Mr. Woolman said in his declaration that he spoke about the incident with James Mann, Chief of Staff to the head of DOJ's Criminal Division, and an investigator from the Inspector General's office. *Id.* The Article reports that Ms. tenBroek, who left the agency after the incident, "did not dispute her co-workers' accounts and said in a statement that she had participated in the department's 'lengthy and taxing' complaint process." *Id.* After the Inspector General began its investigation, "Mr. Kinsey was demoted and moved to another division." *Id.* at 8. The Article notes that he was appealing that decision, and – according to "[a] person close to Mr. Kinsey" – "evidence in another investigation is favorable to him," a statement provided to Ms. Benner by Mr. Kinsey's lawyer. *Id.*

**Mr. Coburn's Correspondence With Ms. Benner**

Prior to publication, Ms. Benner communicated with Plaintiff through his counsel, Barry Coburn. Their email correspondence, which is appended and referred to in the Complaint, *see* Compl. Ex. 1, reflects that they had off-the-record conversations by telephone. In a March 6, 2018, email, Mr. Coburn indicated that their prior and ongoing communications could be converted to "deep background" – that is, usable in the Article without identifying the source – from "off the record." *Id.* at 2. He noted that there was "substantial contrary information" to what Ms. Benner had told him but that he could not state it on the record. *Id.* He also told Ms. Benner that "[i]t seemed liked you became upset and angry when we talked yesterday, particularly when

you said that you hoped I was not threatening you." *Id.* In an email later that day, Ms. Benner responded:

> Thank you so much for this. I was never upset or angry, but only matter of fact. I am not a very upset person in general. :) But sadly I have to ask questions that sometimes cause others to raise their voices and feel defensive. Apologies if that happened yesterday. It is never my intention. I get along with everyone I speak with.

*Id.* at 1. Ms. Benner then indicated that she was "happy to use the sourcing [Mr. Coburn] suggested" and proposed adding two paragraphs to the story, indicating that the Merit Systems Protection Board had conducted an "independent investigation" into Plaintiff's relationship with Ms. tenBroek and concluded that he "did not act in a way that violated departmental rules." *Id.* at 1-2. In response, Mr. Coburn stated – again, on deep background – that the language Ms. Benner proposed was "not entirely accurate" but that he could not "provide specific corrective information." *Id.* at 1.

**This Action**

Plaintiff filed the Complaint on December 29, 2018,[5] asserting one claim for defamation. The Complaint acknowledges that a happy hour for CCS employees took place in May 2017 and that "[d]uring the course of [that] evening, at the bar and elsewhere, interactions of a sexual nature occurred between Mr. Kinsey and Ms. tenBroek." Compl. ¶ 8. But the Complaint alleges that a single statement in the Article quoting Mr. Woolman's declaration – "to the effect that Mr. Kinsey's touching of Ms. tenBroek was 'unwelcome'" – is false and defamatory *per se*. *Id.* ¶ 11. The Complaint alleges that The Times published that statement with actual malice because The Times failed to review materials from the DOJ investigation referenced in Mr. Woolman's declaration. *Id.* Plaintiff asserts that if The Times had probed the declaration, it would have learned that the declaration contained inaccuracies. *Id.* ¶¶ 12(b), (c). Plaintiff also views as

---

[5] Plaintiff served the Complaint on January 22, 2019.

evidence of actual malice that Ms. Benner had made public statements about sexual harassment in Silicon Valley and points to what he characterizes as her anger in in communications with Plaintiff's counsel. *Id.* ¶ 12(a). The Complaint alleges that Plaintiff was "substantially and irreparably damaged" by the Article and seeks damages in excess of $75,000. *Id.* ¶ 13.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal marks omitted). That standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678) (internal marks omitted).[6] The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully" and may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In resolving The Times's motion, the Court may consider the documents attached to the Complaint, including the Article, the pre-Article correspondence between Plaintiff's counsel and Ms. Benner, and Mr. Woolman's declaration. *See, e.g., Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

## ARGUMENT

Early disposition of defamation claims is particularly favored. "Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage."

---

[6] The Times accepts the truth of Plaintiff's well-pleaded allegations solely for the purposes of this Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 679.

*Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (quoting *Wash. Post Co. v. Keogh*,

365 F.2d 965, 968 (D.C. Cir. 1966)) (internal marks omitted); *see also Anderson v. Stanco Sports*

*Library, Inc.*, 542 F.2d 638, 641 (4th Cir. 1976) ("[P]rolonging a meritless case through trial

could result in further chilling of First Amendment rights."). As a practical matter, defamation

cases are frequently ripe for dismissal on a preliminary motion because

> unlike in most litigation, in a libel suit the central event – the communication about which
> suit has been brought – is ordinarily before the judge at the pleading stage. He or she may
> assess it upon a motion to dismiss, firsthand and in context. . . . Thus, courts routinely
> consider, on motions to dismiss, motions for judgment on the pleadings, or demurrer,
> issues such as . . . whether the suit is barred by privilege . . . and they frequently grant
> motions on these grounds and others.

R.D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017).

Here, the Court has two independent grounds on which it may dismiss Plaintiff's

Complaint. First, The Times's publication of the challenged statement is absolutely privileged as

a fair and true report of a judicial proceeding. That statement accurately quotes a declaration

filed in a lawsuit and makes it clear that it is doing so. That means the Times cannot be liable for

defamation – period.

Second, because Plaintiff is a public official, the Complaint must – and fails to –

plausibly plead that The Times published the challenged statement with actual malice, *i.e.*, with

knowledge that the statement was false or with serious doubts about its truth. The Complaint

suggests that The Times's failure to investigate the truth of the challenged statement and Ms.

Benner's views about sexual harassment give rise to a plausible inference of actual malice. The

courts have made clear that neither a failure to investigate nor a reporter's personal views on an

issue are evidence of actual malice.

## I.

## THE CHALLENGED STATEMENT IS
## ABSOLUTELY PRIVILEGED AS A FAIR AND TRUE
## REPORT OF A JUDICIAL PROCEEDING

### A.  The Fair Report Privilege Erects an Absolute Bar to Defamation Claims

The fair report privilege affords the press an absolute privilege when journalists report on judicial proceedings – even when the statement taken from the legal proceeding is shown to be false. When the conditions for the privilege are met – *i.e.*, the report gives a substantially accurate account of a court proceeding or judicial document, and attributes its facts to that proceeding or document – the report's publisher cannot be held liable as a matter of law.[7] In other words, as applied here, whether the eyewitness's declaration was accurate or inaccurate is utterly irrelevant. The privilege applies here, and it defeats Plaintiff's libel claim.

New York's fair report privilege, codified at Civil Rights Law § 74, "prohibits civil actions 'against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding.'" *Tacopina v. O'Keeffe*, 645 F. App'x 7, 8 (2d Cir. 2016) (quoting N.Y. Civ. Rights Law § 74).[8] The privilege is longstanding – it was originally enacted by the New

---

[7] The court need not conduct a choice-of-law analysis here because the substantive laws of the possibly relevant jurisdictions are not in conflict. *See Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 n.12 (2d Cir. 2013) (citing *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004)). Like New York (Defendant's domicile), Maryland (Plaintiff's domicile) and the District of Columbia (where Plaintiff worked) recognize a fair report privilege that applies to reports of judicial proceedings. *See Piscatelli v. Van Smith*, 35 A.3d 1140, 1150 (Md. 2012) (applying privilege to discovery memorandum and summary of trial testimony); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 258-59 (D.D.C. 2013) (applying privilege to affidavit submitted in civil lawsuit). Given the absence of a conflict, New York law should govern. *See Int'l Bus. Machines Corp.*, 363 F.3d at 143 ("In the absence of substantive difference, … a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

[8] In full, § 74 reads as follows:

York Legislature in 1854 as a qualified privilege, and made an absolute privilege in 1930 – and

has a simple purpose: "the protection of reports of judicial proceedings which are made in the

public interest." *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009) (quoting *Williams v.*

*Williams*, 23 N.Y.2d 592, 599 (1969) (internal marks omitted); *accord Gubarev v. BuzzFeed,*

*Inc.*, 340 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (applying New York law), *appeal filed* (Dec.

20, 2018). As one district judge recently put it,

> The press acts as the agent of the public, gathering and compiling diffuse information in
> the public domain. The press also provides the public with the information it needs to
> exercise oversight of the government and with information concerning the public welfare.
> The fair report privilege exists to protect the press as it carries out these functions.

*Gubarev*, 340 F. Supp. 3d at 1314 (citing *Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 714

(4th Cir. 1991)).

There are two prerequisites to the privilege's application to a given statement. The first is

attribution: "the ordinary viewer or reader must be able to determine from the publication itself

that the publication is reporting on a proceeding." *Id.* (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d

209, 216 (N.D.N.Y. 2014)) (internal marks omitted); *see, e.g.*, *Wenz v. Becker*, 948 F. Supp. 319,

323 (S.D.N.Y. 1996). As courts have said time and again, "[q]uotations from, and summaries of,

documents or other material that the report indicates are part of a proceeding are indisputably

statements 'of' that proceeding." *Fine*, 11 F. Supp. 3d at 216-17 (collecting cases); *see also Biro*

*v. Condé Nast*, 883 F. Supp. 2d 441, 478 (S.D.N.Y. 2012) ("Comments that essentially

---

A civil action cannot be maintained against any person, firm or corporation, for the
publication of a fair and true report of any judicial proceeding, legislative proceeding or
other official proceeding, or for any heading of the report which is a fair and true
headnote of the statement published.

This section does not apply to a libel contained in any other matter added by any person
concerned in the publication; or in the report of anything said or done at the time and
place of such a proceeding which was not a part thereof.

summarize or restate the allegations of a pleading filed in an action are the type of statements that fall within section 74's privilege." (quoting *Lacher v. Engel*, 33 A.D.3d 10, 17 (1st Dep't 2006)) (internal marks omitted); *accord Zappin v. Daily News, L.P.*, 2017 WL 3425765, at *8 (S.D.N.Y. Aug. 9, 2017).

The second requirement is accuracy: the report must correctly relay the facts of the proceeding or document being reported on. Consistent with the policy of giving § 74 a "liberal interpretation," courts deem a report "fair and true" so long as "the substance of the article [is] substantially accurate." *Cholowsky*, 69 A.D.3d at 114 (quoting *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67 (1979)) (internal marks omitted); *see Holy Spirit Ass'n*, 49 N.Y.2d at 68 ("[N]ewspaper accounts of legislative or other official proceedings must be accorded some degree of liberality.").

The fair report privilege is "absolute." *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520 (S.D.N.Y. 2013) (quoting *Biro*, 883 F. Supp. 2d at 456) (internal marks omitted). The privilege protects false statements as much as true ones, *see, e.g.*, *Thomas v. City of New York*, 2018 WL 5791965, at *9 (E.D.N.Y. Nov. 5, 2018) ("[A] newspaper is protected by the § 74 privilege even if the published allegations later turn out to be false."), and it relieves a publisher from the obligation to conduct any independent investigation into the veracity of the statement. *Rodriguez v. Daily News, L.P.*, 142 A.D.3d 1062, 1064 (2d Dep't 2016) (media outlet that misidentified plaintiff as rape suspect was not liable where erroneous information was supplied in NYPD press release). A defendant is not obligated to "report the plaintiff's side of the controversy" to benefit from the privilege. *Lan Sang*, 951 F. Supp. 2d at 521 (quoting *Cholowsky*, 69 A.D.3d at 115) (internal marks omitted); *accord Biro*, 883 F. Supp. 2d at 478. Even "proof of malice or negligence" on the publisher's part is immaterial. *Beary v. West Publishing Co.*, 763 F.2d 66, 68

(2d Cir. 1985); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009) ("The section 74 privilege is absolute and is not defeated by allegations of malice or bad faith.").

Because the application of the privilege can be resolved as a matter of law, *see Zappin v. NYP Holdings, Inc.*, 2018 WL 1474414, at *6 (S.D.N.Y. Mar. 26, 2018), courts in this Circuit routinely dismiss claims at the pleading stage upon finding that the privilege applies.[9] *See, e.g.*, *id.* at *6-9; *Lan Sang*, 951 F. Supp. 2d at 524 (statements reporting on default judgment entered in state court); *Thomas*, 2018 WL 5791965, at *10 (articles "accurately summariz[ing] the arrest report, criminal complaint, and statements from police sources"); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588-89 (S.D.N.Y. 2009) (report of state agency investigation); *Jeanty v. City of Utica*, 2017 WL 6408878, at *20 (N.D.N.Y. Aug. 18, 2017) (report of District Attorney's statements about plaintiff's arrest and prosecution); *Fuji Photo Film U.S.A.*, 669 F. Supp. 2d at 415 (statements accurately recounting contents of legal complaint); *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 220 (E.D.N.Y. 2012) (same).

## B. The Challenged Statement Falls Squarely Within the Privilege

The sole challenged statement in the Article – a verbatim quotation of the eyewitness's declaration filed in a federal court proceeding – is the paradigmatic example of a fair and true report.

Plaintiff alleges that the Article defamed him with "[t]he assertion of purported fact" that his "touching of Ms. tenBroek was 'unwelcome.' Compl. ¶ 11. But whatever that statement's

---

[9] The same is true for federal courts in Maryland and the District of Maryland. *See, e.g.*, *Nanji v. Nat'l Geographic Soc'y*, 403 F. Supp. 2d 425, 433-434 (D. Md. 2005) (granting 12(b)(6) motion to dismiss defamation claim on the basis of Maryland fair report privilege); *Hargrave v. Wash. Post*, 365 F. App'x 224 (D.C. Cir. 2010) (fair report privilege warranted dismissal of plaintiff's defamation claim, whether Maryland or D.C. law applied).

impact on his reputation, he has no viable claim against The Times. It is beyond cavil that reporting the contents of a declaration filed in a federal lawsuit – the place where Plaintiff's touching was described as "unwelcome" – comes within the privilege. *See Wenz*, 948 F. Supp. at 323 ("[O]nce the pendency of the judicial proceeding has been established, the privilege pursuant to Section 74 attaches and applies to any pleading in the course of the proceeding."); *see, e.g.*, *Fuji Photo Film U.S.A.*, 669 F. Supp. 2d at 415 (legal complaint); *D'Annunzio*, 876 F. Supp. 2d at 220 (same); *Russian Am. Found., Inc. v. Daily News, L.P.*, 109 A.D.3d 410, 413 (1st Dep't 2013) (FBI affidavit filed in support of search warrant). And the Article makes the source of its statement clear. It quotes from Mr. Woolman's declaration and refers to that document as such. Article at 6. Shortly below the quotation, the Article reproduces two full paragraphs from the declaration as an image, again citing "the declaration by Luke Woolman." Katie Benner, *At the Justice Dept.'s Death Penalty Unit, Accusations of Favoritism, Gender Bias and Unwanted Groping*, The New York Times (Mar. 31, 2018), https://nyti.ms/2Q9uk9C. And both the quotation and image come shortly after the Article's account of Ms. Rodriguez-Coss's lawsuit against the DOJ, which notes that "[s]even men and women from the unit filed declarations in support" of Ms. Rodriguez-Coss. Article at 4. An ordinary reader would have harbored no doubt about the source of the challenged statement. *See Fine*, 11 F. Supp. 3d at 216-17; *Biro*, 883 F. Supp. 2d at 478. And that statement accurately quoted the declaration's contents. *Compare* Article at 6 *with* Woolman Decl. ¶ 6. The fair report privilege applies.

Nothing Plaintiff Kinsey says in his Complaint has any bearing on the application of the privilege. The privilege is not overcome by The Times's alleged knowledge that its statement was false, Compl. ¶ 11, Ms. Benner's alleged "anger" or "hostility" toward Plaintiff, *id.* ¶ 12(a), The Times's purported failure to conduct an investigation, *id.* ¶ 12(b), or the alleged

inconsistencies between Mr. Woolman's declaration and representations he made to others, *id.* ¶

12(c). *See, e.g.*, *Rodriguez*, 142 A.D.3d at 1064; *Fuji Photo Film U.S.A.*, 669 F. Supp. 2d at 411;

*Jeanty*, 2017 WL 6408878, at *19 ("The privilege exists even though the publisher himself does

not believe the defamatory words he reports to be true and even when he knows them to be

false." (quoting Restatement (Second) of Torts § 611 cmt. a (1977)) (alteration and internal

marks omitted).[10]

     Because Plaintiff cannot overcome the privilege, any amendment to the pleadings would

be futile. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). The Complaint

should be dismissed with prejudice.

---

[10] Nor is Plaintiff helped by his argument that Ms. Benner could not rely on Mr. Woolman's declaration because it failed to comply with 28 U.S.C. § 1746 and the local rules of the district court where it was filed. Compl. ¶ 12(b). For one thing, these claims are dubious on their face. Mr. Woolman's declaration was sworn under penalty of perjury and contained an electronic signature. That satisfies 28 U.S.C. § 1746. *See, e.g.*, *United States v. Hyatt*, 2008 WL 616055, at *3 (S.D. Ala. Mar. 3, 2008) (collecting cases); C. Wright et al., 10B Federal Practice & Procedure Civ. § 2738 (4th ed. 2018) ("Since 1976, affidavits no longer need to be notarized and will be admissible if they are made under penalties of perjury; only unsworn affidavits will be rejected."). As for the Local Rules of the U.S. District Court for the District of Connecticut, Plaintiff cites not an actual rule but the text of the notice that a represented party moving for summary judgment must provide to a pro se non-moving party. *See* Compl. Ex. 5 at 54. It is telling that neither the parties nor the court in the proceeding where the declaration was filed ever challenged the filing's legitimacy.

     More importantly, though, any problems with the declaration – including the alleged misstatement of Mr. Woolman's law school year, *see* Compl. ¶ 12(b) – do not affect The Times's entitlement to the fair report privilege. The upshot of Plaintiff's position is that publishers must independently investigate and pore over the details – even minutiae – of court documents before reporting their contents. As noted, the privilege exists to prevent exactly that. *See, e.g.*, *Zappin*, 2018 WL 1474414, at *7 ("Section 74 was designed precisely to protect the publisher of a fair and true report from liability for just such an error and to relieve it of any duty to expose the error through its own investigation." (quoting *Rodriguez*, 142 A.D.3d at 1064)) (alteration and internal marks omitted).

## II.

### PLAINTIFF HAS NOT PLAUSIBLY ALLEGED
### THAT THE TIMES PUBLISHED THE CHALLENGED
### STATEMENT WITH ACTUAL MALICE

There is a second and independent basis for dismissing the Complaint. The First Amendment prohibits public officials and public figures from recovering damages through a libel lawsuit absent proof that a defamatory statement was published with "actual malice" – that is, with knowledge that the statement was false or with "serious doubts" as to its truth. *St. Amant v. Thompson*, 390 U.S. 727, 728, 731 (1968); *see N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). That proof must be "clear and convincing" for the plaintiff to prevail. *Baiul v. Disson*, 607 F. App'x 18, 20 (2d Cir. 2015) (citation and internal marks omitted). At the pleading stage, a public official must "plead plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro*, 807 F.3d at 546 (quoting *Twombly*, 550 U.S. at 556) (alterations and internal marks omitted). Because Plaintiff cannot do so here, the Complaint should be dismissed.

### A.  Plaintiff is a Public Official

As Principal Deputy Chief of CCS – the role he occupied at the time of the events underlying this lawsuit, Compl. ¶ 6 – Plaintiff is a public official for purposes of the actual malice analysis.

The category of "public officials" whose defamation claims are subject to a heightened fault standard is broad and "by no means limited to upper echelons of government." *Horne v. WTVR, LLC*, 893 F.3d 201, 207 (4th Cir. 2018) (quoting *Sack on Defamation* § 5:2.1, at 5-7) (internal marks omitted). As the Supreme Court has explained, the category "applies at the very least to those among the hierarchy of government employees who have, or appear to have,

substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v.*

*Baer*, 383 U.S. 75, 85 (1966). That, as the Court made clear, is an expansive category:

> Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, . . . the New York Times malice standards apply. . . .
>
> The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy.

*Id.* at 85, 86 n.13.

A court may determine a plaintiff's status as a public official or public figure at the pleading stage, as a matter of law. *See, e.g.*, *Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018). Applying the *Rosenblatt* standard, federal courts have designated a wide range of government employees as public officials. *See, e.g.*, *Horne*, 893 F.3d at 208-09 (director of budget and finance for county school board); *Crane v. Arizona Republic*, 972 F.2d 1511, 1525 (9th Cir. 1992) (plaintiff was public official for portions of article that described his activities as a prosecutor); *Meiners v. Moriarity*, 563 F.2d 343, 352 (7th Cir. 1977) (agents from DOJ's Office for Drug Abuse Law Enforcement); *Coliniatis v. Dimas*, 965 F. Supp. 511, 516 (S.D.N.Y. 1997) (director of operations of airline owned by Greek government); *Piccone v. Bartels*, 40 F. Supp. 3d 198, 203 (D. Mass. 2014) (deputy associate chief counsel to Customs and Border Protection); *see also Lovingood v. Discovery Commc'ns, Inc.*, 275 F. Supp. 3d 1301, 1309 (N.D. Ala. 2017) ("The term 'public official' now embraces virtually all persons affiliated with the government, such as most ordinary civil servants, including public school teachers and policemen." (quoting L. Tribe, *American Constitutional Law* 866 (2d ed. 1988))) (alterations and internal marks omitted), *appeal filed* (July 17, 2018).

Given his title and responsibilities, Plaintiff is a classic public official. He was the Principal Deputy Chief (*i.e.*, the sole second in command) at a section of DOJ's Criminal Division charged with providing legal advice about the use of the death penalty. *See* Compl. ¶ 6; United States Department of Justice, *Capital Case Section*, https://bit.ly/2D0Ozlp. CCS's analysis informs recommendations made to the Attorney General about whether to seek the death penalty, and its prosecutors are often directly involved in litigating capital cases. *Id.*; *see also* Department of Justice, *Justice Manual* (2018), § 9-10.040, https://bit.ly/2SAt04E (requiring that the U.S. Attorney or Attorney General consult with CCS "[p]rior to seeking an indictment for an offense potentially punishable by death"). Plaintiff plainly meets the *Rosenblatt* standard.

### B. Plaintiff Has Failed to Plausibly Allege Actual Malice

The burden of plausibly pleading actual malice is met with particularized, nonconclusory allegations that a defendant published statements knowing that they were false or "with reckless disregard as to their falsity." *Biro*, 807 F.3d at 544; *see also Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 F. App'x 87, 88-89 (2d Cir. 2018); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) ("[M]alice must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated."). In this context, actual malice "is not measured by whether a reasonably prudent [person] would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731. Rather, it means that a defendant published a false statement "with a high degree of awareness of probable falsity," or "in fact entertained serious doubts as to the truth of his publication." *Id.* (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)) (alterations and internal marks omitted). Plaintiff's pleadings thoroughly fail to allege that state of mind on the part of Ms. Benner, the reporter. On the contrary, the

pleadings allege that she had multiple reliable sources testifying to Mr. Kinsey's misconduct in the bar and yet actively pursued Mr. Kinsey's side of the story.

The Second Circuit's decision in *Biro* is instructive. The plaintiff, a controversial art authenticator and public figure, brought suit over an article in *The New Yorker* raising questions about the reliability of his methods. 807 F.3d at 543. In pleading actual malice, he made general (*i.e.*, conclusory) allegations about the defendant's subjective state of mind and also cited specifics about their alleged conduct: their failure to "investigate and determine the validity" of the statements at issue, their reliance on "anonymous and biased sources," and their failure to publish evidence favorable to the plaintiff. *Id.* (internal marks omitted). The Second Circuit found these allegations insufficient and affirmed dismissal of his lawsuit. Finding that actual malice must be plausibly alleged, it rejected the plaintiff's boilerplate allegations that the defendants knew or acted in reckless disregard of the statements' falsity. *Id.* at 544-46. And it held that none of the specific allegations amounted to actual malice. Even if true, the defendants' "failure to investigate does not in itself establish bad faith," particularly since that failure was not coupled with "reliance on anonymous or unreliable sources." *Id.* at 546 (quoting *St. Amant*, 390 U.S. at 732) (alterations and internal marks omitted). The defendants had no reason to question the reliability of their sources based on what they knew when the story was published. *Id.* And the fact that the defendants focused on the plaintiff's controversial art authentications did not "plausibly suggest" that they had serious doubts about the truth of their statements. *Id.* at 546.

Here, as in *Biro*, the Complaint's allegations are patently insufficient. Beyond the conclusory allegation that The Times's conduct was "knowingly false or reckless," Compl. ¶ 11, the Complaint pleads two theories in a failed effort to create a plausible inference of actual malice. Neither does.

19

The Complaint's main theory is that The Times "failed to adequately investigate" Mr. Woolman's statement about Plaintiff. *Id.* ¶¶ 11-12(b), (c). But, as *Biro* establishes, a failure to investigate alone is not actual malice. 807 F.3d at 546; *see Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 332 (1974) ("[M]ere proof of failure to investigate, without more, cannot establish reckless disregard for the truth.") (citation and internal marks omitted); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (finding that failure to investigate did not plausibly suggest actual malice and dismissing claim). That is especially so when the fair report privilege is invoked. Plaintiff's theory that journalists cannot report on a filed court document without first investigating its assertions would effectively eliminate the privilege. Plaintiff is simply wrong on the law. *Jeanty*, 2017 WL 6408878, at *19 ("The privilege exists even though the publisher himself does not believe the defamatory words he reports to be true and even when he knows them to be false." (quoting Restatement (Second) of Torts § 611 cmt. a (1977)) (alteration and internal marks omitted).

But even if Plaintiff were right and The Times could not rely on a filed court document, his actual malice pleadings would still be implausible. Mr. Woolman's account was buttressed by a number of other sources: an internal memorandum authored by Amanda Haines, a longtime prosecutor; an account provided by Julia Mosley, another prosecutor at CCS, to the EEOC; Ms. tenBroek herself, who "did not dispute co-workers' accounts" and participated in the DOJ's complaint process; and the Inspector General's investigation, which resulted in Plaintiff's demotion and move to a different division. Article at 6-8. Each of these sources pointed to the same conclusion – that Mr. Kinsey took "unwelcome" liberties with Ms. tenBroek. Taken together, they make thoroughly implausible Mr. Kinsey's pleading that Ms. Benner knew the account of Mr. Kinsey's misconduct in the barroom was false.

In fact, the Complaint makes clear that Ms. Benner had a keen interest in finding the truth. She contacted Mr. Kinsey's lawyer to gather information about the incident in the bar. *See* Compl. Ex. 1. Rather than provide information that would contradict the many accounts of his client's misbehavior, the lawyer instead proclaimed that "substantial contrary information [to Mr. Woolman's declaration] had been elicited" but that certain "constraints" made it impossible for him to be more specific. *See id.* at 2-3. Ms. Benner then proposed adding paragraphs to the Article indicating that Plaintiff had been "exonerated" by an independent investigation conducted by the Merit Systems Protection Board. *See id.* at 1-2. Plaintiff's counsel – who declined to even go on the record – demurred, saying, "we cannot provide specific corrective information." *Id.* at 1 (emphasis added).[11] Far from showing a reckless disregard for the truth, the Complaint paints a picture of a reporter diligently seeking the truth from multiple sources.

The second actual malice theory pleaded in the Complaint is even feebler. Plaintiff alleges that Ms. Benner had a "preconceived narrative" arising from "her prior reporting on sexual misconduct" in Silicon Valley, which she evinced in statements she made about that reporting at a public event,[12] her "anger" during a telephone conference with Plaintiff's counsel, and her "evident hostility" toward Plaintiff Kinsey or his lawyer. *Id.* The Complaint rests on a misunderstanding of the meaning of actual malice. The allegations about Ms. Benner's disposition toward Plaintiff and his counsel – which are in any event contradicted by the pre-Article correspondence – are immaterial here: "Despite its name, the actual malice standard does

---

[11] Plaintiff's counsel was speaking on "deep background," which means that "information can be used but without attribution." The Associated Press, *Anonymous Sources*, https://bit.ly/2xLagq5.

[12] *See* Compl. ¶ 12(a) ("Recounting her reporting concerning sexual harassment in Silicon Valley, Ms. Benner stated: Right now, the system is set up to protect a man's right to make money over a woman's right to live her life and have a job. . . . That's the power difference. . . that's what we're fighting, and that's what we're trying to uncover.")

not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Biro*, 807 F.3d at 546 (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001)). So are Ms. Benner's public statements about sexual harassment in Silicon Valley. The Complaint's allegations show nothing more than that Ms. Benner held opinions about the effect of power dynamics on sexual harassment in the workplace. But actual malice cannot be predicated on a defendant's general views on social issues. *See Reuber*, 925 F.2d at 716 ("[I]t is hardly unusual for publications to print matter that will please their subscribers; many publications set out to portray a particular viewpoint or even to advance a partisan cause. Defamation judgments do not exist to police their objectivity."). In short, nothing about The Times's conduct gives rise to a plausible inference of actual malice.

## CONCLUSION

For all the reasons set forth above, The Times respectfully requests that the Court dismiss the Complaint with prejudice under Rule 12(b)(6) and grant such other and further relief as the Court deems just and proper.

Dated: New York, NY
       February 7, 2019

Respectfully submitted,

/s/ David E. McCraw
David E. McCraw, Esq.
Al-Amyn Sumar, Esq.
The New York Times Company
Legal Department
620 Eighth Avenue, 18th Floor
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
Email: mccraw@nytimes.com

*Attorneys for Defendant*
*The New York Times Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2019, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT THE NEW YORK TIMES COMPANY** was filed with the Court through the electronic filing system, which will automatically serve electronic notice of the same on all counsel of record.

*/s/ David E. McCraw*